IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HENRY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 6364 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| Police Officer LUIS CENTENO, Star #11203; | ) | |
| Police Officer WILFREDO SANCEHZ, Star #6497, | ) | |
| individually; and THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has brought an action for excessive force, failure to provide medical care, and malicious prosecution. Defendants sought to enter a protective order preventing the public disclosure of certain "Confidential Matter" they anticipated would be produced during the course of discovery.[1] Defendants' proposed protective order defined "Confidential Matter" to include Complaint Register files ("CR files"), which are records of investigations into complaints of police misconduct. In an order dated June 10, 2011, Magistrate Judge Valdez granted in part and denied in part defendants' Motion for Entry of Protective Order. Relevant to the instant motion, Judge Valdez found no good cause for preventing the public disclosure of the CR files and ordered that they be excluded from the protective order. Defendants object to Magistrate Judge Valdez's ruling and request that the court vacate that order.[2] For the following reasons, that request is denied.

---

[1]Defendants do not seek to prohibit disclosure to the parties for purposes of this litigation.

[2]Magistrate Judge Valdez also denied defendants' proposal to include a disclosure procedure within the protective order. Defendants, however, make no mention of this issue in their brief objecting to the Magistrate Judge's order.

**DISCUSSION**

**A. Standard of Review**

In reviewing a magistrate judge's pretrial orders on non-dispositive matters, a district judge must "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a); see also 28 U.S.C. § 636(b)(1)(A). It would appear that the "clearly erroneous" standard applies to the magistrate judge's factual determinations, and the "contrary to law" standard applies to the magistrate judge's legal determinations. Gandee v. Glaser, 785 F.Supp. 684, 686 (S.D.Ohio 1992); see Fogel v. Chestnutt, 668 F.2d 100, 116 (2d Cir. 1981), cert. denied sub nom. Currier v. Fogel, 459 U.S. 828, (1982); Jernryd v. Nilsson, 117 F.R.D. 416, 417 (N.D.Ill.1987). Defendants urge that this court has "absolute discretion" to review Magistrate Judge Valdez's legal determinations.

Courts differ, however, as to what precisely the "contrary to law" language in Rule 72(a) and 28 U.S.C. § 636(b)(1)(A) requires. See Merritt v. International Broth. of Boilermakers, 649 F.2d 1013, 1017 (5th Cir. 1981) (non-dispositive orders are subject to the "'clearly erroneous and contrary to law' standard; they are not subject to a de novo determination as are a magistrate's proposed findings and recommendations under § 636(b)(1)(B)"); but see Adolph Coors Co. v. Wallace, 570 F.Supp. 202, 205 (N.D.Calif. 1983) (under Rule 72(a), a court may "overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes or case precedent"). One court has found that an order is contrary to law under Rule 72(a) when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." Tompkins v. R.J. Reynolds Tobacco Co., 92 F.Supp.2d 70, 74 (N.D.N.Y. 2000). The Tompkins court ultimately held that:

> [W]hile authority may exist to support RJR's position, the more critical inquiry on appeal is whether authority exists to support Magistrate Judge DiBianco's decision. As the foregoing analysis illustrates, this Court cannot conclude that the magistrate judge failed to apply or misapplied relevant statutes, case law or rules of procedure. Consequently, his order is not contrary to law.

Id. at 79 (internal citations omitted).

In a footnote in U.S. v. Frans, 697 F.2d 188, 193, n.10 (7th Cir. 1983), however, the Seventh Circuit found that the standards in 28 U.S.C. § 636(b)(1)(A), at a minimum, "do not necessarily restrict" a district court from conducting a "full review" of a magistrate judge's findings. Given this discretion, and because Magistrate Judge Valdez's legal determinations informed her findings, the court will conduct a full review of the instant order. See Jernryd v. Nilsson, 117 F.R.D. 416, 416 (N.D.Ill. 1987) ("Because Magistrate Weisberg's order is based upon legal conclusions and not on his findings of fact, the clearly erroneous standard does not apply and the scope of our review on this motion is plenary.").

**B. Legal Standards – IFOIA and Federal Discovery Rules**

In objecting to Magistrate Judge Valdez's order, defendants assert that the magistrate judge misinterpreted the Illinois Freedom of Information Act ("IFOIA")[3] which, defendants contend, controls the question before the court and "require[s] that CR files be included within the proposed protective order." This overstates the relevance of a state FOIA statute to a federal court's ruling on a question under federal discovery rules. "FOIA was not intended to supplement or displace rules of discovery." John Doe Agency v. John Doe Corp., 493 U.S. 146, 153 (1989). More specifically, IFOIA does not control this court's determination as to whether "good cause" has been shown to subject CR files to a protective order. Johnson v. Kemps, No.

---

[3] 5 ILCS § 140.

09 CV 4857, 2011 WL 2550507, at *2 (N.D.Ill. June 20, 2011); Calhoun v. City of Chicago, 273 F.R.D. 421, 423 (2011); Rangel v. City of Chicago, No. 10 C 2750, 2010 WL 3699991, at *2 (N.D.Ill. Sept. 13, 2010).

The interest at issue under FOIA is a statutorily created right of public access to certain information and the circumstances under which that right may be restrained, see 5 ILCS 140/1:

> [I]t is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act.
>
> Restraints on access to information, to the extent permitted by this Act, are limited exceptions to the principle that the people of this State have a right to full disclosure of information relating to the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people.

The IFOIA exemptions prevent "merely curious members of the public who are entitled to disclosure under the general thrust of Illinois FOIA" from accessing certain information. See Brown v. City of Chicago, 2011 WL 222840, at *2 (N.D.Ill. January 24, 2011).

On the other hand, when considering whether it is appropriate to enter a protective order preventing the public disclosure of information obtained through the course of discovery, the interest at issue is the litigant's First Amendment right to disseminate that information and under what circumstances that right may be restrained. See Jepson, Inc. v. Makita Elec. Works, Ltd., 30 F.3d 854, 858 (7th Cir. 1994); Brown, 2011 WL 222840, at *2. "[I]nformation obtained through civil discovery authorized by modern rules of civil procedure would rarely, if ever, fall within the classes of unprotected speech identified by decisions of this Court." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 31 (1984). "Absent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." Jepson, 30 F.3d at 858; Brown,

2011 WL 222840, at *2; Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 780 (1st Cir. 1988); see Seattle Times Co., 467 U.S. at 20, 31–36.

To be subject to discovery, information need only be "relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1); Seattle Times Co., 467 U.S. at 34. The Seattle Times court noted, 467 U.S. at 34:

> Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.

Thus, under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). Although Rule 26(c) provides for the suppression of protected speech, the restraint does not run afoul of the First Amendment because it furthers an unrelated substantial government interest. See Seattle Times Co., 467 U.S. at 31, 34. Some factors to consider in weighing these interests are "privacy interests, whether the information is important to public health and safety and whether the party benefiting from the confidentiality of the protective order is a public official." Wiggins v. Burge, 173 F.R.D. 226, 229 (N.D.Ill. 1997); see also Seattle Times Co., 467 U.S. at 38, n.21 ("Although [Rule 26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule.").

The question before the court in ruling on this proposed protective order, then, is not the FOIA-conferred right of "merely curious members of the public" to access certain information, but rather a litigant's (albeit limited) First Amendment right to disseminate information properly

5

obtained through pre-trial discovery. The court must take care not to conflate rules regarding a universal "public right to know" with rules regarding a litigant's right to disseminate. See Brown, 2011 WL 222840, at *2 "Such conflation, like any other Pavlovian-type generalization, is likely to generate an overly simplistic answer to the more precise question posed in a particular case."[4] Id. That a FOIA exemption may curtail the general right of access to information that FOIA otherwise bestows upon the public does not necessarily restrain an individual's right to share the same information obtained by other means.

FOIA can, nevertheless, provide guidance as to whether good cause exists for a proposed protective order, as well as guidance as to the nature of the public's interest. See Johnson, 2011 WL 2550507, at *2; Rangel, 2010 WL 3699991, at *2. Therefore, having rejected as a matter of law defendants assertion that IFOIA "requires" a protective order to be entered, the court will next consider what guidance IFOIA offers as to whether a protective order should be entered.

**C. 5 ILCS 140/7(n)**

To show good cause for a protective order that includes CR files, defendants rely heavily on § 140/7(n) of IFOIA. Section 140/7(n) exempts from inspection and copying: "[r]ecords relating to a public body's adjudication of employee grievances or disciplinary cases; however, this exemption shall not extend to the final outcome of cases in which discipline is imposed." Defendants assert that CR files fall within this exemption, and there is thus good cause for a protective order that prevents their public disclosure.

---

[4]Defendants' assertion that there is no right of public access to unfiled discovery and their reliance on Bond v. Utreras, 585 F.3d 1061 (7th Cir. 2009), illustrates this very mistake. At issue is a litigant's right to speak, not the public's right to hear.

The parties agree, however, that there is broad disagreement as to whether § 140/7(n) actually covers CR files.[5] See, e.g., Rangel, 2010 WL 3699991, at *4 (holding that CR files are not exempt under section 140/7(n)); Parra v. City of Chicago, 09 C 4067, dkt. 82 (N.D.Ill. April 14, 2010) (same); Macias v. City of Chicago, 09 C 1240, dkt. 62 (N.D.Ill. March 10, 2010) (same); Fuller v. City of Chicago, 2009 U.S. Dist. LEXIS 125727 (N.D.Ill. Nov. 10, 2009) (same); but see Livingston v. McDevitt, 09 C 7725, dkt. 23 (N.D.Ill. May 10, 2010) (holding that CR files are exempt under section 140/7(n)); Alva v. City of Chicago, 08 C 6261, dkt. 80 (N.D.Ill. April 16, 2010) (same); Bell v. City of Chicago, 2010 U.S. Dist. LEXIS 18903 (N.D.Ill. Feb. 26, 2010) (same); see also Brown, 2011 WL 222840, at *2 (court's ruling that CR files would be included in a protective order was "subject to possible further revision in the event of future developments in the law in this area and is not intended to control what may ultimately be the operative rule as to the public disclosure of CRs.").

If this was a case brought under IFOIA, it would be incumbent upon this court to determine whether CR files fall within the § 140/7(n) exemption. Because IFOIA does not control the question before the court, however, the court need not reach this difficult question of law. The court simply finds that, given the disagreement over what § 140/7(n) actually covers, that section's guidance as to whether good cause exists for a protective order is not very helpful, and is certainly insufficient to resolve the question before the court.

---

[5]Defendants make numerous references to the legislative intent in support of their contention that CR files fall within § 140/7(n). These references are of limited probative value. Although not fatal to defendants' argument, there are conflicting indications that the language in § 140/7(n) was meant only to placate unions representing public teachers and state workers, and that, generally, the recent changes to IFOIA were actually intended "to remove loopholes that had been exploited by government officials." See Rangel, 2010 WL 3699991, at *3 (citing THE STATE JOURNAL-REGISTER, Apr. 27, 2010, May 27, 2009).

**D. Defendant Officers' Privacy Interests**

As noted, a plaintiff's right to disseminate information obtained in pre-trial discovery may be curtailed by a protective order. In the instant case, the privacy interests of the defendant police officers constitute the potential justification for entering a protective order. See Seattle Times Co., 467 U.S. at 38, n.21. On this point, the court finds that IFOIA does provide helpful guidance. With respect to privacy interests, IFOIA states unequivocally that "[t]he disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy." 5 ILCS § 140/7(c). In considering a police officer's privacy interest in CR files, the Illinois Appellate Court has noted:

> What [an officer] does in his capacity as a deputy sheriff is not his private business. Whether he used excessive force or otherwise committed misconduct during an investigation or arrest is not his private business. Internal-affairs files that scrutinize what a police officer did by the authority of his or her badge do not have the personal connotations of an employment application, a tax form, or a request for medical leave.

Gekas v. Williamson, 912 N.E.2d 347, 356 (Ill. App. Ct. 2009).[6]

Although not controlling, the court finds this statement of law and the underlying reasoning to be clear and persuasive.[7] Privacy interests will often be sufficient to establish good

---

[6]Defendants contend that any reliance on Gekas is misplaced because "Gekas has been rendered obsolete" by the addition of § 140/7(n) to the latest version of IFOIA. First, the court notes that this is true only if one accepts that CR files actually fall within § 140/7(n). Further, even if CR files were definitively found to fall within § 140/7(n), they would simply be exempt from disclosure despite the Gekas court's reasoning that what an officer does in his official capacity is not his private business. Concluding that § 140/7(n) applies to CR files would not, however, undermine the soundness of the reasoning itself, independent of an IFOIA claim.

[7]This is in contrast to § 140/7(n), the meaning of which has proven difficult to discern. Aside from the disagreement over whether CR files are covered by the exemption, it is not clear precisely what interest § 140/7(n) is meant to serve. There is no explicit reference to "privacy"
(continued...)

cause for a protective order. Where the information at issue relates solely to the public duties of a public employee, however, the claim to that privacy interest is far more tenuous.

Defendants cite to O'Malley v. Village of Oak Brook, 2008 WL 345607, (N.D.Ill. 2008), and assert that the disclosure of CR files is particularly problematic because the existence of a CR file alone does not establish misconduct.

> [W]e should not ignore that disciplinary investigations are just that: investigations into charges of misconduct that may or may not have merit. It may be the case that the public would not treat the mere fact of investigation as proof of misconduct. On the other hand, disclosure of the fact of disciplinary investigations may taint the reputation of a police officer if members of the public assume that where there is smoke, there is fire.

Id. at *2 (internal citations omitted).

Although the court is not insensitive to this argument, the court ultimately finds the reasoning in Rangel and Gekas to be more persuasive:

> The officers understandably prefer not to have disciplinary history and citizen complaints made potentially available outside the police department. Nevertheless, police officers are public employees, paid by the taxpayers. The public's interest in transparency outweighs the officers' privacy interest.
>
> Information contained in CR complaints and disciplinary histories, though personal, has a distinct public character, as it relates to the defendant officers' performance of their official duties. Without such information, the public would be unable to supervise the individuals and institutions it has entrusted with the extraordinary authority to arrest and detain persons against their will. With so much at stake, defendants simply cannot be permitted to operate in secrecy.

---

⁷(...continued)
in § 140/7(n). Rule 26(c) implicates privacy interests only implicitly, but the widespread agreement over the "broad purpose" of Rule 26(c) stands in marked contrast to the widespread disagreement over the purpose of § 140/7(n). Cf. Seattle Times Co., 467 U.S. at 38, n.21. The exemption is not listed under IFOIA's general exemption for privacy interests, see § 140/7(c), and in fact, it is separated from the privacy exemption by ten other exemptions for interests as varied as public health, maintaining trade secrets, and homeland security. See §§ 140/7(c-n).

Rangel, 2010 WL 3699991, at *4.

> …[C]itizens might want to see whether the Division is performing a fair and objective investigation of complaints. They might want to see whether complaints that the Division determined to be unfounded are really unfounded. Obviously, citizens cannot perform this critique (which section 1 [of IFOIA] calls nothing less than the people's " duty") if so-called "unfounded" complaints are exempt from disclosure for the tautological reason that the public body decided they were unfounded.

Gekas, 912 N.E.2d at 357-58 (internal citations omitted).

The court finds good cause for a protective order covering defendants' medical and personal information, as well as any personal and confidential information concerning third parties. On this point, plaintiff raises no objection. CR files that have been properly redacted, however, contain information relating solely to the public duties of the officers in question. A litigant's First Amendment right to disseminate information obtained through pre-trial discovery may indeed be limited. Nevertheless, unlike Seattle Times Co., the court finds that this right outweighs any privacy interest the defendant officers may have in the CR files, insofar as the files contain information relating only to their public duties. Cf. Seattle Times Co., 467 U.S. at 38 (Brennan, J., concurring) ("I agree that the respondents' interests in privacy and religious freedom are sufficient to justify this protective order and to overcome the protections afforded free expression by the First Amendment."). Defendants have not shown good cause to include the CR files in the protective order.

## **CONCLUSION**

For the forgoing reasons, defendants' request to vacate Magistrate Judge Valdez's June 10, 2011 order is denied.

**ENTER:** August 23, 2011

_____
**Robert W. Gettleman
United States District Judge**